**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED DECEMBER 28, 2005**

DEBRA LEA MILLER,

    Plaintiff-Appellee,

v                                  No. 127767

JOHN THOMAS MILLER,

    Defendant-Appellant.

_____

PER CURIAM.

This case presents the question whether the domestic relations arbitration act (DRAA)[1] requires a formal hearing during arbitration comparable to that which occurs in traditional trial proceedings. We conclude that it does not.

Also at issue is whether a court order to which the parties have stipulated in writing can satisfy the act's requirement of a written agreement to arbitrate. We conclude that it can. Therefore, we reverse the judgment of the Court of Appeals, which ruled to the contrary on

---

[1] MCL 600.5070 *et seq*.

both issues, and we reinstate the arbitration award and the judgment of divorce.

THE FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed for divorce in January 2001. After failed settlement conferences in the circuit court, on December 4, 2001, both parties stipulated in writing to entry of an order sending all issues in the case to binding arbitration.

The arbitrator put the parties in separate rooms during the arbitration proceedings. He shuttled between them, gathering the necessary information and hearing the respective arguments. Both parties agreed to this procedure.

At the end of the day, plaintiff asked the arbitrator for additional sessions. He denied the request, expressly noting in his written award that plaintiff had failed to raise anything new to justify further proceedings. When plaintiff made a second request, the arbitrator gave her three days to provide an outline of what she would present at the additional proceedings. She supplied, instead, voluminous material. Rather than schedule more hearings, the arbitrator reviewed plaintiff's material, modified the award, and issued the final binding arbitration award.

2

Plaintiff filed a motion in court to set aside the arbitration award on the basis that the arbitrator had failed to conduct a "hearing" as required by the DRAA. She also claimed that no arbitration agreement existed. The court rejected plaintiff's claims and entered a judgment of divorce. In a split published decision, the Court of Appeals reversed the judgment of the circuit court and vacated the arbitration award. It held that the DRAA required a formal hearing and that none occurred during the arbitration. *Miller v Miller*, 264 Mich App 497; 691 NW2d 788 (2004).

### THE APPROPRIATE STANDARD OF REVIEW

The two issues on appeal are matters of statutory interpretation that we review de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2004). When interpreting a statute, our goal is to give effect to the Legislature's intent as determined from a review of the language of the statute. *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002).

Defendant asks us to review the Court of Appeals decision not to enforce the arbitration award. We review such decisions de novo to determine whether the arbitrators exceeded their powers. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 496-497; 475 NW2d 704 (1991).

3

Arbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority or in contravention of controlling law. *DAIIE v Gavin*, 416 Mich 407, 433-434; 331 NW2d 418 (1982).

## WHAT CONSTITUTES A HEARING UNDER THE DRAA

MCL 600.5081 is the statutory provision that governs vacation and modification of arbitration awards under the DRAA. MCL 600.5081(2) provides:

> If a party applies under this section, the court shall vacate an award under any of the following circumstances:
>
> (a) The award was procured by corruption, fraud, or other undue means.
>
> (b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.
>
> (c) The arbitrator exceeded his or her powers.
>
> (d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

The Court of Appeals concluded that the arbitrator violated MCL 600.5081(2)(d). It reasoned that the informality of the hearing prejudiced plaintiff's rights. The question is whether, in proceedings under the DRAA, the statute precludes hearings being conducted as the hearing was conducted in this case.

4

In reaching its decision, the Court of Appeals majority relied primarily on MCL 600.5074(1), which provides:

> An arbitrator appointed under this chapter *shall hear* and make an award on each issue submitted for arbitration under the arbitration agreement subject to the provisions of the agreement. [Emphasis added.]

The DRAA does not define the term "hear" or "hearing." Moreover, it sets no procedural requirements for arbitration. Rather, it specifically eschews them. For example, MCL 600.5077 requires, with certain exceptions, that the arbitrator not make an official record of most arbitration proceedings.[2] This purposeful requirement of little or no record shows that the Legislature intended not to require specific procedures in arbitration proceedings.

---

[2] MCL 600.5077 provides:

> (1) Except as provided by this section, court rule, or the arbitration agreement, a record shall not be made of an arbitration hearing under this chapter. If a record is not required, an arbitrator may make a record to be used only by the arbitrator to aid in reaching the decision. The parties may provide in the arbitration agreement that a record be made of those portions of a hearing related to 1 or more issues subject to arbitration.
>
> (2) A record shall be made of that portion of a hearing that concerns child support, custody, or parenting time in the same manner required by the Michigan court rules for the record of a witness's testimony in a deposition.

5

Without a record, reviewing courts cannot assess what procedures have been followed.

The Legislature's failure to provide specific arbitration procedures is consistent also with tradition. Historically, judicial review of arbitration awards is highly limited. *Gavin*, 416 Mich 433-434. This Court has characterized arbitration procedures as "informal and sometimes unorthodox . . . ." *Id*. at 429. Consequently, courts should not speculate why an arbitrator ruled in one particular manner. *Id*.

Rather than employ the formality required in courts, parties in arbitration are able to shape the parameters and procedures of the proceeding. The DRAA requires that they first sign an agreement for binding arbitration delineating the powers and duties of the arbitrator. MCL 600.5072(1)(e).

The act also contemplates that the parties will discuss with the arbitrator the scope of the issues and how information necessary for their resolution will be produced. MCL 600.5076. The act contemplates that the parties will decide what is best for their case. Nowhere in the DRAA are procedural formalities imposed that restrict this freedom.

This Court has consistently held that arbitration is a matter of contract. "It is the agreement that dictates the authority of the arbitrators[.]" *Rowry v Univ of Michigan*, 441 Mich 1, 10; 490 NW2d 305 (1992). In this case, the Court of Appeals decision infringes on the parties' recognized freedom to contract for binding arbitration.

It restricts the parties' freedom to decide how the arbitration hearing should be conducted.[3] Plaintiff presents no convincing argument that the Legislature intended all DRAA hearings to approximate traditional court hearings. We know of none.[4] It is inappropriate for a court to read into a statute something that was not

---

[3] The language in US Const, art I, § 3, cl 6, stating that the Senate shall "*try* all Impeachments," does not constitute an "implied limitation on the method by which the Senate might proceed in trying impeachments," *Nixon v United States,* 506 US 224, 230; 113 S Ct 732; 122 L Ed 2d 1 (1993). Similarly, the language in MCL 600.5074(1), stating that the arbitrator "shall *hear* and make an award on each issue submitted for arbitration," does not constitute an implied limitation on the method by which the arbitrator might proceed in *hearing* the issues. (Emphasis added.)

[4] Court of Appeals Judge Kirsten Frank Kelly correctly noted in her dissent: "[A]lthough the majority refers to the process [used in this arbitration] as mediation, the process was still binding; binding mediation is equivalent to arbitration and subject to the same judicial limitations on review. *Frain v Frain*, 213 Mich App 509, 511-513; 540 NW2d 741 (1995)." *Miller*, 264 Mich App 517-518.

intended. *AFSCME v Detroit*, 468 Mich 388, 412; 662 NW2d 695 (2003).

Significantly, in this case, the parties specifically agreed to allow the arbitrator to conduct the hearing in two separate rooms. If the parties and the arbitrator thought that this was the best way to hold their hearing, they were at liberty to make that agreement. Because it is the agreement of the parties that dictates arbitration, the Court of Appeals should not have altered the agreement. *Rowry*, 441 Mich 10.

THE SUFFICIENCY OF THE PARTIES' WRITTEN ARBITRATION AGREEMENT

Plaintiff argued below that no written arbitration agreement existed in this case. Defendant disagreed. Although the Court of Appeals majority did not reach this issue directly, it listed as alternative grounds for possible relief that the stipulated order did not constitute a written arbitration agreement. *Miller*, 264 Mich App 507 n 12. We disagree.

As we noted earlier, the DRAA requires a written arbitration agreement setting out the subject of the arbitration and the arbitrator's powers. MCL 600.5071 and MCL 600.5072(1)(e). Here, the parties entered into a written agreement satisfying these requirements when they

8

stipulated to entry of the particularized order for binding arbitration that the court in due course entered.

The order lists the issues for arbitration. It clearly delineates the arbitrator's powers and duties. Accordingly, it is sufficient to satisfy the requirements of MCL 600.5071 and MCL 600.5072(1)(e).[5]

Nothing in the DRAA mandates that there be an agreement separate from the stipulated order. This is consistent with the informal and sometimes unorthodox nature of arbitration. *Gavin*, 416 Mich 429. As long as the parties agree to some document that meets the minimal requirements of MCL 600.5071 and MCL 600.5072(1)(e), the agreement is sufficient. Therefore, we reverse the

---

[5] In addition, but not relevant here, the parties must satisfy MCL 600.5072(1)(a) to (d), which provide:

> The court shall not order a party to participate in arbitration unless each party to the domestic relations matter acknowledges, in writing or on the record, that he or she has been informed in plain language of all of the following:
>
> (a) Arbitration is voluntary.
>
> (b) Arbitration is binding and the right of appeal is limited.
>
> (c) Arbitration is not recommended for cases involving domestic violence.
>
> (d) Arbitration may not be appropriate in all cases.

9

decision of the Court of Appeals that reached the contrary conclusion.

## CONCLUSION

We hold that the domestic relations arbitration act does not require that the formality of a hearing in arbitration proceedings approximate that of a hearing in court. Arbitration is by its nature informal. The appropriate structure for an arbitration hearing is best decided by the parties and the arbitrator. A procedure by which the arbitrator shuttles between the parties in separate rooms questioning and listening to them satisfies the act's requirement of a hearing.

We also hold that no written agreement beyond the order for binding arbitration is required (1) if the parties stipulate to entry of the order and the order meets the criteria of MCL 600.5071 and MCL 600.5072(1)(e), and (2) if the parties satisfy MCL 600.5072(1)(a) to (d) on the record.

Therefore, we reverse the judgment of the Court of Appeals and reinstate the arbitration award and the judgment of divorce.

Clifford W. Taylor
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

10

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

DEBRA LEA MILLER,

    Plaintiff-Appellee,

v                                                   No. 127767

JOHN THOMAS MILLER,

    Defendant-Appellant.

_____

CAVANAGH, J. *(concurring)*.

I concur in the result reached by the majority for the reasons set forth in *Renny v Port Huron Hosp*, 427 Mich 415, 437; 398 NW2d 327 (1986).

                        Michael F. Cavanagh