# STATE OF MICHIGAN

# COURT OF APPEALS

---

ROBERT JENE CUMMINGS,

        Plaintiff/Counter-Defendant-
        Appellant,

v

JEANETTE RAE CUMMINGS,

        Defendant/Counter-Plaintiff-
        Appellee.

UNPUBLISHED
May 19, 2015

No.   318724
Eaton Circuit Court
LC No.   98-000231-DO

---

Before:  WILDER, P.J., and OWENS and M.J. KELLY, JJ.

PER CURIAM.

In this post-judgment divorce proceeding, plaintiff, Robert Jene Cummings, appeals as of right from the trial court's October 2, 2013 order, which denied plaintiff's motion to vacate the November 12, 2012 binding mediation award and incorporated the award into the parties' May 25, 2000 judgment of divorce.  We affirm.

Initially, we note that the final order in this case refers to the award as both a binding mediation award and an arbitration award.  The parties and the trial court also interchangeably refer to the process used in this case as arbitration and binding mediation.  However, the award states that it is a binding mediation award and the agreement signed by the parties states that it is a binding mediation agreement.  Further, binding mediation is equivalent to arbitration, given the binding nature of both processes, and thus, subject to the same judicial review.  *Frain v Frain*, 213 Mich App 509, 511-513; 540 NW2d 741 (1995); see also *Miller v Miller*, 474 Mich 27, 33 n 4; 707 NW2d 341 (2005).  Therefore, we refer to the process used in this case as binding mediation.

Plaintiff married defendant, Jeanette Rae Cummings, in 1974, and filed for divorce in February 1998.  The parties agreed to binding mediation in 1999 regarding "all issues," and that binding mediation award was incorporated into the May 25, 2000 judgment of divorce, which disposed of all issues in the case.  Approximately nine years later, in April 2009, defendant filed a motion to enforce the judgment of divorce, asking the trial court to order that plaintiff return the various personal property items listed in addendum B of the judgment of divorce that were awarded to defendant.  In July 2009, she filed a supplement to her motion, seeking emergency spousal support.  In October 2009, the parties stipulated to binding mediation once again.  The

-1-

mediator issued a binding mediation award on November 12, 2012, which was eventually incorporated into the parties' judgment of divorce.

On appeal, plaintiff argues that the award should be vacated because he did not receive due process, the mediator acted contrary to law and agreement, and the mediator was not impartial. MCL 600.5081(2) provides four circumstances under which a reviewing court may vacate a domestic relations arbitration award:

> (a) The award was procured by corruption, fraud, or other undue means.
>
> (b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.
>
> (c) The arbitrator exceeded his or her powers.
>
> (d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

First, plaintiff argues that the award should be vacated because he was not afforded due process where the proceedings were untimely and the mediator was not impartial. Plaintiff cites *Dobrzenski v Dobrzenski*, 208 Mich App 514; 528 NW2d 827 (1995), to argue that the proceedings cannot be piecemealed with continuous delays and irregularities. As stated in *Dobrzenski*,

> Due process applies to any adjudication of important rights. It is a flexible concept calling for such procedural protections as the particular situation demands. Due process requires fundamental fairness, which involves consideration of the private interest at stake, the risk of an erroneous deprivation of such interest through the procedures used, the probable value of additional or substitute procedures, and the state or government interest, including the function involved and the fiscal or administrative burdens imposed by substitute procedures. [*Id.* at 515 (internal quotations and citations omitted).]

Plaintiff argues that, as in *Dobrzenski*, the mediation "got out of control" with numerous motions filed, numerous hearings held, multiple attorney substitutions, two trial judges, two mediations, and lost records. However, the record does not defy review as in *Dobrzenski* and the proceedings did not spiral out of control to the extent that they did in *Dobrzenski*. See *Dobrzenski*, 208 Mich App at 515 (stating that issues in that case "were tried piecemeal, tossed back and forth between referee and judge, and complicated with multiple show cause hearings and motion hearings using four different court reporters, double reversal of findings by the court, twenty-three adjournments, lost records, substitutions of counsel, and partial hearings in propria persona").

Plaintiff cites multiple attorney substitutions as a reason to support his argument that he did not receive due process, however, he was the one substituting attorneys. Further, the fact that the original trial judge retired does not automatically affect due process. Plaintiff also does not

identify which records were lost or incomplete, and he substantially contributed to many of the motions filed in the case.

Additionally, contrary to plaintiff's argument, the proceedings did not drag out over 13 years in violation of MCL 552.508.[1] Rather, the divorce proceedings were finalized in May 2000 when the judgment of divorce was entered, which distributed the parties' assets and determined spousal support. The second binding mediation, occurring approximately nine years later, was a result of defendant's motion to enforce the judgment of divorce, which is not a continuation of the original action, but rather a post-judgment enforcement action. Defendant also requested an extension of spousal support, and because the trial court originally provided alimony, it is vested with continuing jurisdiction, regardless when the motion was filed, pursuant to MCL 552.28. See *Rickner v Frederick*, 459 Mich 371, 378-379; 590 NW2d 288 (1999).[2] Finally, plaintiff also requested and agreed to the second binding mediation.

Plaintiff further argues that the three years it took to complete the mediation was untimely, but the record shows that the proceedings did consistently move along, albeit slowly, and most of the delays are attributable to motions filed by plaintiff and his substitution of counsel four times.

---

[1] MCL 552.508 provides,

> The circuit court shall utilize referees and take other appropriate action to expedite obtaining relief in the form of child or spousal support in domestic relations matters, including the entry and enforcement of child support orders and the enforcement of spousal support orders, as necessary to obtain dispositions of petitions for relief within the following time frames:
>
> (a) Ninety percent of dispositions within 3 months after filing a petition.
>
> (b) Ninety-eight percent of dispositions within 6 months after filing a petition.
>
> (c) One hundred percent of dispositions within 12 months after filing a petition.

[2] MCL 552.28 creates a statutory right for either party to seek modification of alimony, and provides:

> On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17, the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action.

In further support of his due process claim, plaintiff also cites *Miller v Miller*, 264 Mich App 497; 691 NW2d 788 (2004), rev'd 474 Mich 27 (2005), to argue that a full and fair hearing before a neutral mediator is required, and the parties did not agree to the procedures the mediator used. Our Supreme Court in *Miller* reversed this Court's finding that the Domestic Relations Arbitration Act (DRAA) required a formal hearing. *Miller*, 474 Mich at 35. Rather, the Supreme Court stated, "[a]rbitration is by its nature informal. The appropriate structure for an arbitration hearing is best decided by the parties and the arbitrator. A procedure by which the arbitrator shuffles between the parties in separate rooms questioning and listening to them satisfies the act's requirements of a hearing." *Id.*

In this case, the parties agreed to binding mediation, which like arbitration, does not require a certain degree of formality. The record shows that numerous hearings were held and the mediator heard testimony from both sides. Plaintiff does not identify what procedures the mediator used that the parties did not agree to, other than to say that objections were made as to how the mediator handled the issues. Plaintiff argues that the mediator did not allow cross-examination of some witnesses, called his own witnesses, advocated for defendant, and participated in ex parte communications, but plaintiff makes no citation to the record. The excerpts of the proceedings in the record show that plaintiff was able to cross-examine the witnesses, and the parties' mediation agreement states that the mediator may request information from a third party if he deemed it helpful. Accordingly, plaintiff has failed to support his claim.

Next, plaintiff argues that the award should be vacated because the mediator exceeded its powers and acted contrary to law and agreement by mediating issues that were decided over 13 years ago and by delaying the mediation proceedings over three years. Pursuant to MCL 600.5081(2)(c), "a party seeking to prove that a domestic relations arbitrator exceeded his or her authority must show that the arbitrator either (1) acted beyond the material terms of the arbitration agreement or (2) acted contrary to controlling law." *Washington*, 283 Mich App at 672. "A reviewing court may not review the arbitrator's findings of fact, and any error of law must be discernible on the face of the award itself." *Id.* (internal citations omitted).

Plaintiff argues that under MCR 2.612(C), MCR 2.119(F), and MCR 7.104(A)(1), and the doctrine of laches and res judicata, the issues addressed in the second mediation should never have been raised because the parties agreed to only one mediation and one divorce and the judgment of divorce issued in May 2000 already disposed of the issues. Plaintiff, however, does not identify the issues which he argues should not have been addressed by the mediator. The mediation award shows that defendant was awarded $97,252.38, the value of the property that defendant was to be awarded in the judgment of divorce that plaintiff never handed over, $652 per month for spousal support based on her exigent circumstances which included her lack of income and health issues, and $75,000 in attorney fees and costs for the "extended mediation" related to the property issues and plaintiff's substitution of counsel and delays. Thus, it is clear that the issues addressed by the mediator involved enforcement of the judgment of divorce and modification of spousal support. The court rules plaintiff cites address relief from a final judgment, reconsideration of a final judgment, and appealing a final judgment, and do not apply to the current factual scenario.

Further, plaintiff seems to ignore the fact that the trial court originally provided alimony, and thus, was vested with continuing jurisdiction to review spousal support pursuant to MCL

-4-

552.28.  Likewise, plaintiff makes no argument that defendant's claim to enforce the property award in the judgment of divorce was untimely, and pursuant to MCL 600.5809(3),[3] defendant had 10 years to bring her claim to enforce the judgment of divorce.  See *Rybinksi v Rybinski*, 333 Mich 592, 596; 53 NW2d 386 (1952); *Peabody v DiMeglio*, 306 Mich App 397, 404-405; 856 NW2d 245 (2014).  Plaintiff argued that the judgment of divorce discharged the parties from all actions they may have against each other, but makes no argument that this also precludes actions to enforce the judgment of divorce.  Notably, the judgment of divorce also contained a clause giving the trial court authority to enforce the judgment of divorce and issue sanctions if the parties could not determine the amount of cash or substitute real or personal property.

Plaintiff also seems to place emphasis on the fact that the binding mediation agreement states that a new judgment of divorce would be entered, which is contrary to the principles of res judicata.  However, the agreement simply states that the award would be incorporated into "the judgment entered in the case" and that plaintiff would prepare a proposed judgment.  It further states that the parties would need to agree on the language to be used in the judgment of divorce.  This language does not indicate that a new judgment would necessarily be issued.  Rather, "the judgment entered in the case" can easily be inferred to mean the May 25, 2000 judgment of divorce.  And, in fact, the trial court incorporated the November 12, 2012 mediation award into that judgment of divorce.

Plaintiff also asserts that the mediator acted contrary to law by issuing the award eight months after the proceedings concluded, which was contrary to MCL 600.5078(1).  MCL 600.5078(1) does require the arbitrator to issue the written award within 60 days after the end of the hearing or after the receipt of proposed findings of fact and conclusions of law.  However, in *Washington*, 283 Mich App at 676 n 6, this Court held that relief from an untimely arbitration award was not warranted where the appellant failed to allege "what substantial difference would have resulted from a timely arbitration ruling," which plaintiff has failed to do in this case.  Rather, plaintiff merely asserts that the award was untimely.  There is also nothing in record that indicates the delay had an effect on the mediator's award.  See *id.*  Moreover, pursuant to MCL 600.5078(1), an arbitrator may issue the award 60 days after the parties submit their proposed findings of fact and conclusions of law.  Because the record does not indicate whether the parties submitted these, and if so, when, the record is insufficient to conclude whether the mediator did in fact violate MCL 600.5078(1).  Therefore, plaintiff has failed to support this claim.

Finally, plaintiff argues that the award should have been vacated because the mediator was not impartial, and it shows on the face of the award.  To vacate an arbitration award based on partiality, the partiality or bias " 'must be certain and direct, not remote, uncertain or speculative.' "  *Bayati v Bayati*, 264 Mich App 595, 601; 691 NW2d 812 (2004)), quoting *Belen*

---

[3] MCL 600.5809(3), provides in part, "the period of limitations is 10 years for an action founded upon a judgment or decree rendered in a court of record of this state . . . from the time of the rendition of the judgment or decree."  The judgment of divorce was entered on May 25, 2000, and defendant brought her action to enforce it on April 23, 2009, within the 10-year limitation period.

*v Allstate Ins Co*, 173 Mich App 641, 645; 434 NW2d 203 (1988). In other words, the bias or prejudice must be concrete. *Id.*

First, plaintiff asserts that the mediator advocated for defendant throughout the proceedings. For example, plaintiff asserts that the mediator referred to defendant as his client, and stated that he cared for her and that she "needs a man to defend her." However, plaintiff provides no support or citation to the record for these statements, other than to reference an affidavit by one of his former attorneys. As noted, bias must be concrete and not speculative, and statements made by a person can easily be taken out of context. Without more, it is difficult to conclude that these statements alone demonstrate concrete bias.

Second, plaintiff argues that the mediator participated in ex parte communications with the parties, particularly defendant and her attorney. However, there are also references made in the record to the fact that the mediator had causal conversations with one of plaintiff's previous attorneys, and there is no indication that any ex parte communication influenced the mediation award or involved anything more than causal conversation about the case. Further, plaintiff provides no authority that ex parte communication was prohibited. There is no rule that ex parte contact between an arbitrator and the parties requires that the award be vacated. *Cipriano v Cipriano*, 289 Mich App 361, 370; 808 NW2d 230 (2010). Rather, cases where the arbitration award was vacated due to ex parte communication involved a violation of the arbitration agreement prohibiting such conduct. *Id.* The binding mediation agreement in this case did not contain a clause prohibiting ex parte communication, so there is no indication that the mediator exceeded his powers by acting beyond the material terms of the parties' contract. See *id.* at 371.

Third, plaintiff argues that the mediator wasted time during the proceedings discussing the grievances that were filed against him. This fact does not show that the mediator had a concrete bias against plaintiff. Rather, it appears that the mediator simply wanted to tell his side of the story and defend the allegations against him. It also appears that the mediator was attempting to explain how incredible he found plaintiff and his witnesses, given the various inconsistencies and hostility displayed throughout the proceedings, including the allegations made in the grievances.

Fourth, plaintiff argues that the mediator employed procedures that were unfairly prejudicial to the parties. Specifically, plaintiff asserts that the mediator only considered defendant's evidence and witnesses and dismissed all of plaintiff's testimony and witnesses. The mediation award, however, indicates otherwise. The mediator thoroughly discussed the testimony of the parties' witnesses. The fact that the mediator found plaintiff and his witnesses to be incredible does not indicate bias. See, e.g., *Armstrong v Ypsilanti Charter Twp.*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (noting that judicial rulings are almost never sufficient to show bias unless there is a "deep-seated favoritism").

Plaintiff also asserts that the mediator badgered witnesses, but the only example he gives is that the mediator poked a witness with a pencil. While poking a witness with a pencil, if that is exactly what occurred, is inappropriate, it does not show a concrete bias.

Finally, plaintiff argues that the mediator unreasonably delayed the proceedings. However, plaintiff does not explain how the mediator unreasonably delayed the proceedings. He

-6-

does not identify any actions the mediator took, other than to delay issuing the award by eight months, and does not explain how a delay in proceedings is evidence of bias. As discussed above, many of the mediation delays were attributable to plaintiff. And the passage of time does not show concrete bias.

Notably, in reviewing the excerpts of the mediation hearings, the record shows that the hearings were often hostile or aggressive. As the trial court noted, although there are times where the mediator's behavior was not indicative of "a good mediator" or necessarily professional, overall, it appears that the mediator did the best that he could to control the situation he was presented with and keep calm when the hearings became aggressive. The mediator addressed all the parties' objections during the hearings, attempted to clarify testimony, and made sure that specific questions were answered without the witnesses adding unnecessary information. The award also shows that the mediator thoroughly considered the testimony provided by both parties and made determinations regarding all the witnesses' credibility. While the mediator certainly made his frustrations and anger known many times, he did not display a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Armstrong*, 248 Mich App at 597 (internal quotations and citations omitted). Therefore, we affirm the binding mediation award that was incorporated into the May 25, 2000 judgment of divorce.[4]

Affirmed.

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly

---

[4] In affirming the binding mediation award, we reject defendant's argument that plaintiff's motion to vacate the award was untimely. Pursuant to MCR 3.602(J)(3), plaintiff had 21 days after the date of the award to file the motion to vacate, unless a motion to correct errors or omissions was filed. *Vyletel-Rivard v Rivard*, 286 Mich App 13, 23; 777 NW2d 722 (2009). If a motion to correct errors or omissions is filed, then the 21-day period begins on the date the mediator's decision on the motion is delivered. *Id.* Such motion was filed by defendant in this case, but the mediator suffered a stroke before he could issue a decision on the motion. The trial court issued a decision on the motion and an order reflecting that ruling was entered in August 29, 2013, after plaintiff filed his motion to vacate. Accordingly, the motion was timely pursuant to MCR 3.602(J)(3) and *Rivard*.