*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

WOLF CREEK PRODUCTIONS, INC.,
THOMAS W. NICHOLS, MICHAEL SHERRILL,
and THOMAS NELSON,

      Plaintiffs-Appellants,

v

MICHAEL STEVEN GRUBER,

      Defendant-Appellee.

UNPUBLISHED
January 24, 2019

No. 342146
Shiawassee Circuit Court
LC No. 2017-001086-CB

---

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

PER CURIAM.

Plaintiffs appeal as of right the circuit court's order that affirmed the arbitration award in favor of defendant. We affirm.

## I. BASIC FACTS

This case arises from an employment dispute between plaintiffs and defendant. Plaintiff Wolf Creek Productions, Inc. (WCP), is a corporation in the business of developing and producing outdoor hunting, fishing, and related television/cable shows. Defendant, Michael Gruber, was an employee and board member of WCP. After a company reorganization, defendant entered into an employment agreement with WCP in November 2012. The agreement contained the following termination provisions:

> 7. **Termination.** This Agreement shall terminate, unless otherwise determined and codified in writing by the Board of Directors of EMPLOYER, upon the occurrence of any of the following events:
>
>               \*   \*   \*
>
> C.     Termination by EMPLOYER "for cause." EMPLOYER shall have the right to immediately terminate this Agreement under the following circumstances, each of which shall be deemed "For Cause":

* * *

    iii.   EMPLOYEE commits any material fraud, theft, embezzlement, misdemeanor or felony or other offense against EMPLOYER.

    iv.   EMPLOYEE violates the "Confidentiality, Non-Disclosure and Covenant not to Compete" as referenced in this Agreement, or any other similar agreements entered into between EMPLOYER and EMPLOYEE from time to time.

* * *

    viii.   EMPLOYEE engages in any conduct which EMPLOYER, or it's [sic] Board of Directors believes, in good faith, is detrimental to the best interests of EMPLOYER'S Business, and has, or will materially negatively affect EMPLOYER'S Business.

For purposes of this paragraph 7C, determination by a majority of the Board of Directors, (excluding any vote from EMPLOYEE, if EMPLOYEE is a member of the Board of Directors) shall be determinative. If there is no majority consensus of the Board of Directors, then a vote of not less than 65% ownership interest of the shareholders then entitled to vote shall be determinative.

In January 2015, defendant learned from Thaddius Bedford, who works under the business entity Liquid Image, Inc., that the Professional Sporting Clay Association (PSCA) was looking for a new production company to handle the second season of a show it had. After defendant negotiated with PSCA, defendant informed the principals of WCP that a contract with PSCA "would deliver $340,000" to WCP. The WCP principals, including plaintiffs Thomas Nichols, Michael Sherrill, and Thomas Nelson, agreed to the proposed terms. Defendant, in the name of his own company, Steve Gruber LLC, later signed a letter of intent with PSCA, which ultimately led to the execution of a contract between Steve Gruber LLC and PSCA. The terms of this contract called for PSCA to pay Steve Gruber LLC a total of $385,000. However, part of the agreement indicated that it was the intention of Steve Gruber LLC "to utilize and sub-contract with Liquid Image, Inc. and Wolf Creek Productions to assist in the production of the episodes of PSCA TV contemplated herein." In addition, Liquid Image received a "finder's fee" or commission of $45,000 from PSCA. Liquid Image then split that fee and gave $22,500 to defendant.

The arbitration panel found that

[t]here is no dispute that Jon Ross, a senior producer at WCP, was in charge of the PSCA project; that WCP was paid $340,000 for the project and may have been paid slightly more for some other expenses; that PSCA actually conveyed $100,000 payment to WCP even before this contract was signed.

Although requested several times by WCP employees, defendant never furnished a copy of the PSCA contract. At some point later, plaintiffs Sherrill and Nichols learned that the PSCA contract was for $385,000 and that defendant had received $22,500 from Liquid Image.

-2-

On April 5, 2016, a shareholders' meeting was held, where all five shareholders were present. However, the meeting was adjourned "until after conduct of the Board of Directors meeting," which took place immediately thereafter. The discussion at the board of directors meeting reflected a concern for how the PSCA contract was executed and the fact that defendant had received an extra $22,500, when the board thought that the $22,500 should have gone to WCP.

On May 11, 2016, the "continued annual meeting of the shareholders" took place. All were present except for defendant, who was out of the country. At the meeting, the members who were present (constituting 65% of the company's stock) unanimously voted to terminate defendant's employment due to defendant's material breach of the employment agreement and the covenant not to compete agreement. The shareholders left it for the board of directors to determine the effective date of the termination and to negotiate the terms of the buy-out of defendant's stock.

After defendant's employment was terminated, he filed suit in circuit court. WCP, pursuant to the terms of the Agreement, required that the case be handled in arbitration; accordingly, the parties agreed to dismiss the case from circuit court. In his claim submitted to the arbitration panel, defendant alleged breach of employment contract and non-controlling shareholder oppression. Plaintiffs, as the respondents in the arbitration, brought their own counter-claims of breach of fiduciary duty, tortious interference with business expectancy, conversion, fraud, and breach of statutory requirement to discharge duties in good faith.

Of note, among defendant's listed issues for arbitration, he listed, "Whether claimant, Michael Steven Gruber, violated his Wolf Creek employment contract" and "Whether there was 'just cause' to terminate the Wolf Creek employment contract of the claimant." In their response, plaintiffs denied that these were issues for the arbitration panel to decide, stating that "the governing documents" describe the processes for determining a violation and process for determining just cause.

After a lengthy arbitration process, the three-member panel issued a split decision. The majority framed the issue as thus, "[A]lthough the record is lengthy, the issue is simple and straightforward: did Wolf Creek Productions terminate Steve Gruber's services for just cause?" Two of the arbitrators found that "[t]here was no just cause to terminate Michael Steven Gruber from the employment of Wolf Creek Productions, Inc." The panel found that this situation constituted "a classic case of pretext" because the issue involving the PSCA deal was used to accomplish the desire of Nichols, who had been stating for a long time that he had wanted defendant to leave WCP. The panel then returned the matter "to the parties to address the question of remedy."

In a dissent, one arbitrator would have found that just cause existed for the termination of defendant's employment with WCP.

Plaintiffs thereafter filed suit in circuit court to vacate the arbitration award. In their corresponding motion, plaintiffs argued that the arbitration panel acted outside of its authority by failing to follow the law and that the panel failed to properly interpret the employment contact.[1]

Regarding the panel acting outside the scope of its authority and failing to properly interpret the employment contract, plaintiffs asserted that the arbitration panel applied the incorrect legal standard related to what the respective burdens of proof were in the matter. Plaintiffs took exception to the panel requiring them to meet a burden of proving by a preponderance of the evidence that good cause existed to terminate defendant's employment. Plaintiffs noted that, pursuant to the employment agreement, the determination by a majority of the board of directors on this matter is "determinative." Thus, according to plaintiffs, defendant could not challenge that determination of just cause, and the arbitration panel was precluded from revisiting that determination. Plaintiffs further noted that such decisions by the board of directors were " 'binding and conclusive . . . absent an affirmative showing by EMPLOYEE that EMPLOYER had no reasonable, good faith basis for any decisions and determinations in interpreting, enforcing or applying any of the terms and provisions of the Agreement.' " Thus, plaintiffs contended that the burden was on defendant, as the claimant, to prove that WCP acted without good faith.

The circuit court noted that it was precluded from engaging in contract interpretation when reviewing an arbitration award. Thus, the court could not consider plaintiffs' argument related to the employment agreement. The court also ruled that because the employment agreement provided that the arbitration panel would decide on "[a]ny claims, causes of actions, or demand of whatsoever kind," the arbitrators acted within the scope of their authority.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's ruling on a motion to vacate or modify an arbitration award." *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). However, our review is extremely limited. *Id.* Indeed, "[a]rbitration, by its very nature, restricts meaningful legal review in the traditional sense." *Detroit Auto Inter-Insurance Exchange v Gavin*, 416 Mich 407, 429; 331 NW2d 418 (1982).

> A court may not review an arbitrator's findings or decision on the merits. Rather, a court may only decide whether the arbitrator's award draws its essence from the contract. If the arbitrator in granting the award did not disregard the terms of his employment and the scope of his authority as expressly circumscribed in the contract, judicial review effectively ceases. [*Fette v Peters Constr Co*, 310 Mich App 535, 541; 871 NW2d 535 (2015) (quotation marks and citation omitted).]

Instead, our review is restricted to whether it can fairly be said that the arbitrators acted "beyond the material terms of the contract from which they primarily draw their authority or in

---

[1] And, although not pertinent to the issues before this Court on appeal, plaintiffs also argued that one of the arbitrators was not "neutral."

contravention of controlling principles of law." *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005).

## III. DISCUSSION

Plaintiffs argue that the trial court erred when it denied their request to vacate the arbitration award. MCR 3.602(J)(2) governs the vacating of arbitration awards and provides as follows:

(2) On motion of a party, the court shall vacate an award if:

(a) the award was procured by corruption, fraud, or other undue means;

(b) there was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights;

(c) the arbitrator exceed his or her powers; or

(d) the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

The fact that the relief could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award. [See also MCL 691.1703(1).]

Plaintiffs, while presumably relying on MCR 3.602(J)(2)(c), claim that the arbitrators exceeded their powers and authority when they decided on the issue of just cause because the employment agreement between WCP and defendant precluded the arbitrators from deciding on that issue. Plaintiffs point to ¶ 7C of the employment agreement, which provides that WCP "shall have the right to immediately terminate [defendant's employment]" for cause and that such a "determination by a majority of the Board of Directors . . . shall be determinative." Thus, plaintiffs assert that the arbitrators necessarily erred when they issued the award based solely on the conclusion that just cause to terminate defendant's employment did not exist.

However, although plaintiffs characterize the arbitrators as exceeding their authority, what plaintiffs actually argue is that the arbitrators misinterpreted the employment contract—specifically, the termination section—between WCP and defendant. Our Supreme Court has cautioned that

an allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision. Stated otherwise, courts may not substitute their judgment for that of the arbitrators and hence are reluctant to vacate or modify an award when the arbitration agreement does not expressly limit the arbitrators' power in some way. [*Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 500; 475 NW2d 704.]

-5-

Here, plaintiffs do not identify any authorizing provision or rules of the American Arbitration Association that the arbitrators have exceeded.[2] Instead, plaintiffs simply argue that the arbitrators have ignored controlling and outcome-determinative principles of law. However, no such error is apparent from the face of the award. See *Gavin*, 416 Mich at 428. Simply put, nothing on the face of the award demonstrates that the arbitrators were precluded from deciding on the issue of whether just cause existed to terminate defendant's employment. In making this argument, plaintiffs rely on the employment agreement between WCP and defendant. But this Court is precluded from "engaging in contract interpretation, which is a question for the arbitrator." *Konal v Forlini*, 235 Mich App 69, 74; 596 NW2d 630 (1999); see also *City of Ann Arbor v AFSCME Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). Consequently, plaintiffs ask us to do what we are not permitted to do—namely, to interpret the underlying employment contract and decide if the arbitration panel properly interpreted it.

Moreover, regardless of what defendant's employment agreement with WCP provided, looking at the award, it is clear that the complained-of error has been extinguished. The award states the following:

> At the end of the arbitration hearing in this matter, *the parties agreed that the Panel at this time would determine whether there was just cause to terminate [defendant]*. If there is a finding that there was no just cause, then the understanding was that the matter would be returned to the parties to address the question of remedy. [Emphasis added.]

Waiver is the intentional relinquishment of a known right. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 379; 666 NW2d 251 (2003). And waiver extinguishes any error. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). Here, the face of the award shows that the parties agreed to allow the arbitrators to decide on the issue of just cause. See *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 557; 682 NW2d 542 (2004) ("[C]ontracting parties may tailor the arbitration's scope and procedure in a way that best suits them."). As a result, plaintiffs cannot now complain because the arbitration panel did what the parties agreed was proper. See *Living Alternatives for Developmentally Disabled, Inc. v Dep't of Mental Health*, 207 Mich App 482, 484; 525 NW2d 466 (1994) ("A party may not take a position in the [lower proceeding] and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the [lower proceeding]."); *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989) ("A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper [below] since to do so would permit the party to harbor error as an appellate parachute."). In other words, because the award shows that the parties authorized the arbitration panel to decide whether just cause existed to terminate defendant's employment, plaintiffs cannot demonstrate that the arbitration panel exceed its authority.

---

[2] The provision authorizing arbitration simply provides that arbitration "shall be settled in accordance with the rules, then in effect, adopted by the American Arbitration Association."

Plaintiffs also argue that the award should be vacated because the arbitration panel failed to address plaintiffs' counterclaims. We disagree. First, it is not clear that the panel failed to address plaintiffs' counterclaims. While the award does not expressly mention the counterclaims, the panel could have concluded that with there being no just cause to terminate defendant's employment and with plaintiff's justification for the termination being a "classic case of pretext," these findings also resolved the counterclaims. Second, as already noted, the award states that the parties agreed that the panel at that time would only be deciding whether just cause existed to terminate defendant's employment and that if no just cause was determined to have existed, then the matter would be returned to the parties. Thus, plaintiffs cannot show how the arbitration panel committed any legal error when it did what the parties purportedly requested. See *Living Alternatives for Developmentally Disabled*, 207 Mich App at 484; *Dresselhouse*, 177 Mich App at 477.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel