*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UHG BOCA, LLC,

        Plaintiff-Appellant,

v

MEDICAL MANAGEMENT PARTNERS, LLC,
UHG MICHIGAN, LLC, HEALTH SYSTEMS,
INC., DAVID KATZ, SCOTT ZACK, and CORY
MANN,

        Defendants-Appellees.

UNPUBLISHED
January 18, 2024

No. 361539
Oakland Circuit Court
LC No. 2016-154057-CB

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's final judgment confirming an arbitration award after denying in part and granting in part plaintiff's motion to partially vacate the arbitration award. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The parties to the lawsuit are a group of connected business entities located in Michigan and Florida and their members. Plaintiff UHG Boca, LLC, and defendant UHG Michigan, LLC, were the members of defendant Medical Management Partners, LLC ("MPP"), and signatories to an operating agreement concerning the same. Defendants David Katz, Scott Zack, and Cory Mann managed defendant Health Systems, Inc.

On July 18, 2016, plaintiff filed a complaint against defendants asserting various theories of breach of contract and business torts related to the division of monies plaintiff believed due to it under the MPP operating agreement and assignment agreement. The business conducted between the parties was aimed at generating patient leads from car accidents and cross-referring those patients to imaging and other services owned by the parties. As part of the lead-generation effort, the parties illegally obtained police reports of accident victims. As a result, several individuals were criminally charged.

-1-

In its complaint, plaintiff alleged: (1) breach of contract for failure to make distributions under the MPP operating and assignment agreements and sought specific performance of the agreement; (2) unjust enrichment; (3) conversion; (4) fraud in the inducement; (5) fraud and misrepresentation; and (6) oppression. In general, plaintiff alleged that defendants improperly diverted money from the collectibles that the businesses were to share and did not properly account for those collectibles when dividing the proceeds upon dissolution of the businesses. The matter was sent to binding arbitration by the trial court on November 11, 2016.

The arbitrator, Michael R. Turco, received evidence and testimony during a hearing and issued his final determination and award on October 27, 2021. The arbitrator noted in the opinion that Zack, Katz, and Mann did not testify at the hearing and invoked their Fifth Amendment right to refuse to testify when questioned about the stolen police reports. With regard to the breach-of-contract claim, the arbitrator concluded that the wrongful conduct rule precluded enforcement of the operating and assignment agreements. Specifically, the arbitrator concluded that the revenue that plaintiff was seeking from defendants was the result of illegal patient billing or other illegal business practices. Thus, in the arbitrator's view, it would be contrary to public policy to enforce the agreements. Concerning the fraud and conversion claims, the arbitrator concluded that fraud claims were mere restatements of the contract claims and thus barred under the economic loss doctrine, and otherwise determined it would be improper to divide the proceeds of illegal activity.

The arbitrator did agree, however, that plaintiff had viable claims against defendants that were not barred by the wrongful conduct rule. With regard to television and radio advertisements paid for by plaintiff, for example, the arbitrator determined there was nothing illegal about those activities and awarded plaintiff damages related to amounts it claimed were not reimbursed by defendants. In addition, the arbitrator concluded that certain amounts taken by defendants Mann, Zack, and Katz from the businesses were improper and awarded plaintiff damages to compensate it for those funds.

After the arbitrator issued the final award, plaintiff moved to vacate in part the arbitrator's award, asserting that the arbitrator improperly applied the wrongful conduct rule when he refused to enforce the agreements. Plaintiff also argued the arbitrator improperly applied the adverse inference rule when he concluded, on the basis of the adverse inference, that the parties were conducting an illegal enterprise. The trial court disagreed and confirmed the award. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's ruling on a motion to vacate or modify an arbitration award. This means that we review the legal issues presented without extending any deference to the trial court." *Radwan v Ameriprise Ins Co*, 327 Mich App 159, 164; 933 NW2d 385 (2018) (quotation marks and citation omitted). "Whether an arbitrator exceeded his or her authority is also reviewed de novo." *Id.* (citation and quotation marks omitted). "Arbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority or in contravention of controlling law." *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005).

[A]ny error of law must be discernible on the face of the award itself. By "on its face" we mean that only a legal error that is evident without scrutiny of intermediate mental indicia will suffice to overturn an arbitration award. Courts will not engage in a review of an arbitrator's mental path leading to [the] award. Finally, in order to vacate an arbitration award, any error of law must be so substantial that, but for the error, the award would have been substantially different. [*Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009) (citation and quotation marks omitted; alteration in original).]

## III. ANALYSIS

## A. WRONGFUL CONDUCT RULE

In its first three issues presented on appeal, plaintiff argues that the arbitrator incorrectly applied the wrongful conduct rule. We disagree.

In its arbitration decision, the arbitrator stated the following concerning the wrongful conduct rule:

Regardless of which party pulled the actual strings, the fact is that the enterprise acted illegally and, in doing so, generated profits. Agreements to divide profits generated through those wrongful actions are unenforceable because they violate public policy or through application of the Wrongful Conduct Rule. Regardless of Petitioners' failed efforts to arrest the illegal conduct, the fact remains that Petitioners and Respondents (i) jointly owned certain clinics and other businesses, (ii) those businesses engaged in wrongful or illegal conduct, and (iii) the revenue over which they are fighting is the direct result of the clinics' or businesses' illegal or wrongful activities. As much as I dislike the idea of anyone profiting from fleecing the no fault system, I find the Operating and Assignment and Assumption Agreements are unenforceable . . . .

"[A] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Orzel by Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995) (citation and quotation marks omitted; alteration in original). "When a plaintiff's action is based on his own illegal conduct, and the defendant has participated equally in the illegal activity, a similar common-law maxim, known as the 'doctrine of in pari delicto' generally applies to also bar the plaintiff's claim . . . ." *Id*. "The rule rests on the public policy premise that courts should not, directly or indirectly, encourage or tolerate illegal activities." *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 89; 697 NW2d 558 (2005).

The arbitrator did not erroneously apply the wrongful conduct rule. The arbitrator concluded, on the basis of the evidence and testimony submitted, that the parties engaged in various illegal and wrongful activities that formed the basis of the monies that were being sought in the lawsuit. Whether each activity was criminally charged or a violation of a criminal statute does not bar the imposition of the wrongful conduct rule, as plaintiff suggests. See *Orzel*, 449 Mich at 561 (stating "where the plaintiff's illegal act only amounts to a violation of a safety statute,

such as traffic and speed laws or requirements for a safe workplace, the plaintiff's act, while illegal, does not rise to the level of serious misconduct sufficient to bar a cause of action by application of the wrongful conduct rule."). Similarly, the plaintiff's wrongful conduct was the proximate cause of its injuries in that it sought to recover monies that were improperly obtained under the agreements. Thus, under the wrongful conduct rule, plaintiff was precluded from using the courts to divide the proceeds of ill-gotten gains, see *Hashem*, 266 Mich App at 89, and the arbitrator did not err when it applied the rule to plaintiff's claims.

## B. PUBLIC POLICY AND UNJUST ENRICHMENT/CONVERSION

Next, plaintiff claims that the arbitrator erred when he denied plaintiff's requests for relief on the basis of public policy. Plaintiff also argues the arbitrator improperly dismissed the conversion and unjust enrichment claims. We disagree.

"[I]f a contract be void as against public policy, the court will neither enforce it while executory, nor relieve a party from loss by having performed it in part." *Epps v 4 Quarters Restoration, LLC*, 498 Mich 412, 542-543; 872 NW2d 518 (2015); see also *Jaenick v Davidson*, 290 Mich 298, 298; 287 NW 472 (1939) ("All contracts which are founded on an act prohibited by a statute under a penalty are void although not expressly declared to be so and neither law nor equity will enforce a contract made in violation of such a statute or one that is in violation of public policy"). "The rationale that Michigan courts have used to support the wrongful-conduct rule are rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Orzel*, 449 Mich at 559.

The arbitrator concluded that plaintiff was not entitled to relief, in part, because the contracts were unenforceable in that they served an improper purpose to split the proceeds of an illegal operation. This conclusion was made on the basis of testimony and evidence presented to the arbitrator, as well as the adverse inferences the arbitrator applied, which will be discussed in more detail below. Because this Court's review is limited to whether the arbitrator exceeded his authority or made a substantial error of law, the factual conclusion that the arbitrator came to is entitled to the Court's deference. See *Washington*, 283 Mich App at 672. Accordingly, because the purpose of the agreements between the parties was to exploit and then share the profits from illegal activities, plaintiff cannot seek redress in the courts for any injuries it may have suffered under those agreements. See *Orzel*, 449 Mich at 559.

Plaintiff also contends that the conversion and unjust enrichment claims were erroneously dismissed. However, Michigan law is clear that in order to maintain an action in tort, the plaintiff must show a breach of a duty separate from the contractual breach. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 47-48; 649 NW2d 783 (2002); *Gonyea v Motor Parts Federal Credit Union*, 192 Mich App 74, 82; 480 NW2d 297 (1991). Because plaintiff failed to show that defendants breached a duty separate and distinct from those imposed by the agreements, the arbitrator did not err when he dismissed those claims.

## C. ADVERSE INFERENCE RULE

-4-

Lastly, plaintiff argues that the arbitrator erred when he decided to assign adverse inferences to the decision of certain witnesses not to testify regarding the stolen police reports. We disagree.

"The privilege against self-incrimination permits a defendant to refuse to answer official questions in any other proceeding, no matter how formal or informal, if the answer may incriminate him or her in future criminal proceedings." *In re Blakeman*, 326 Mich App 318, 333; 926 NW2d 326 (2018). However, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." *Id*. at 334 n 4 (quotation marks and citation omitted). While plaintiff is correct that certain witnesses that did not testify were defendants, individuals associated with plaintiff also refused to testify at the hearing. Moreover, contrary to plaintiff's assertion, the arbitrator did not rely solely on the adverse inferences when he made his determination that the businesses were operating in an illegal fashion. Accordingly, the arbitrator did not did not err when it applied the adverse-interest rule.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Noah P. Hood