*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MELINDA FAY TOWNSEND,

        Plaintiff/Counterdefendant-Appellant,

v

DENNIS WILLIAM TOWNSEND,

        Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
July 08, 2025
2:05 PM

No. 369668
Wayne Circuit Court
LC No. 23-100074-DO

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Plaintiff, Melinda Fay Townsend, appeals as of right the trial court's judgment of divorce denying plaintiff spousal support and attorney fees and requiring the parties to arbitrate the division of the parties' personal property. We vacate in part the trial court's judgment and remand for further proceedings.

## I. FACTS

The parties were married for 45 years; at the time of trial in 2023, both parties were 63 years old. During the marriage, defendant, Dennis William Townsend, worked as a pipefitter and supported the family; in the year preceding trial, he reported earnings of over $100,000, and also earned additional unreported income from working at miscellaneous jobs. Plaintiff was a full-time homemaker and mother. The couple also invested in rental properties, which plaintiff managed and helped to maintain; at the time of divorce, the parties had four rental properties that produced income totaling $5,300 per month.

After trial, the trial court entered a judgment of divorce. Among other issues addressed, the judgment awarded plaintiff the couple's home, valued at $226,000, with plaintiff obligated to pay $16,924.90, which represented one half of the balance of the mortgage loan on the house. Plaintiff was awarded two of the parties' four rental properties, valued at $375,000, and producing income of $2,800 per month, and defendant was awarded the other two rental properties, valued at $304,000, and producing income of $2,500 per month. Each party was awarded their own vehicle, an equal share of all bank accounts, investment accounts, and defendant's defined contribution plan, and plaintiff was awarded a 50% interest in the marital share of defendant's

-1-

pension. Each party was ordered to pay their own credit card debt incurred after the parties separated. The judgment of divorce also ordered that neither party would receive spousal support, that each party was required to pay their own attorney fees, and that the parties were to participate in arbitration to divide the parties' personal property; each party was ordered to pay half of the cost of the arbitration. Plaintiff now appeals.

## II. DISCUSSION

## A. ARBITRATION

Plaintiff contends that the trial court erred by ordering the parties to participate in arbitration to divide the parties' personal property. We agree.

Under the Domestic Relations Arbitration Act (DRAA), MCL 600.5070 *et seq*., parties in a divorce action "may stipulate to binding arbitration by a signed agreement that specifically provides for an award" with respect to the division of real and personal property. MCL 600.5071. In addition, MCL 600.5072 provides:

> (1) The court shall not order a party to participate in arbitration unless each party to the domestic relations matter acknowledges, in writing or on the record, that he or she has been informed in plain language of all of the following:
>
> (a) Arbitration is voluntary.
>
> (b) Arbitration is binding and the right of appeal is limited.
>
> (c) Arbitration is not recommended for cases involving domestic violence.
>
> (d) Arbitration may not be appropriate in all cases.
>
> (e) The arbitrator's powers and duties are delineated in a written arbitration agreement that all parties must sign before arbitration commences.
>
> (f) During arbitration, the arbitrator has the power to decide each issue assigned to arbitration under the arbitration agreement. The court will, however, enforce the arbitrator's decisions on those issues.
>
> (g) The party may consult with an attorney before entering into the arbitration process or may choose to be represented by an attorney throughout the entire process.
>
> (h) If the party cannot afford an attorney, the party may wish to seek free legal services, which may or may not be available.
>
> (i) A party to arbitration will be responsible, either solely or jointly with other parties, to pay for the cost of the arbitration, including fees for the arbitrator's services. In comparison, a party does not pay for the court to hear and decide an

issue, except for payment of filing and other court costs prescribed by statute or court rule for which the party is responsible regardless of the use of arbitration.

(2) If either party is subject to a personal protection order involving domestic violence or if, in the pending domestic relations matter, there are allegations of domestic violence or child abuse, the court shall not refer the case to arbitration unless each party to the domestic relations matter waives this exclusion. A party cannot waive this exclusion from arbitration unless the party is represented by an attorney throughout the action, including the arbitration process, and the party is informed on the record concerning all of the following:

> (a) The arbitration process.

> (b) The suspension of the formal rules of evidence.

> (c) The binding nature of the arbitration.

(3) If, after receiving the information required under subsection (2), a party decides to waive the domestic violence exclusion from arbitration, the court and the party's attorney shall ensure that the party's waiver is informed and voluntary. If the court finds a party's waiver is informed and voluntary, the court shall place those findings and the waiver on the record.

(4) A child abuse or neglect matter is specifically excluded from arbitration under this act.

Thus, the DRAA requires an agreement to arbitrate to be "a written agreement setting out the subject of the arbitration and the arbitrator's powers." *Miller v Miller*, 474 Mich 27, 34; 707 NW2d 341 (2005), citing MCL 600.5071 and MCL 600.5072(1)(e). When a particularized order for binding arbitration clearly delineates the arbitrator's powers and duties and identifies the issues for arbitration, the stipulated order satisfies the written agreement requirement of the DRAA. *Id*. In addition, the trial court may satisfy the requirements of MCL 600.5072(1)(a)-(d) on the record rather than in writing. *Miller*, 474 Mich at 34-35. The proper application of the DRAA is a question of law that we review de novo. See *id*. at 30.

At the conclusion of trial in this case, the trial court directed each party to prepare a list of the items that party was requesting as their share of the parties' personal property. But during a hearing following trial, the trial court stated that "[t]he parties are to submit to arbitration as to the personal property with Gerald Soborowski." The trial court thereafter entered the judgment of divorce. The parties and their attorneys stipulated to the form and content of the judgment, which included the following paragraph:

> IT IS FURTHER ORDERED that the parties are to submit to Arbitration with Gerald Soborowski as to personal property with each party being responsible for fifty percent (50%) each as to costs and attorney fees charged by the Arbitrator.

-3-

The judgment does not delineate the arbitrator's powers and duties, nor does the judgment state the parties' acknowledgement that the arbitration is voluntary, that the arbitration is binding, and that the right of appeal regarding the arbitration is limited, as required by MCL 600.5072(1).

On appeal, the parties do not dispute that they did not stipulate in writing to arbitration regarding the division of their personal property apart from stipulating to the judgment of divorce. Similarly, the parties do not dispute that they were not advised, as required by MCL 600.5072(1), that the arbitration is voluntary, binding, and not appropriate in all cases. In addition, at the conclusion of trial the trial court directed each of the parties to prepare a list of the personal property the party was requesting to be awarded, suggesting that as of the end of trial the parties had not consented to arbitrate the division of the parties' personal property. Because the parties did not agree to arbitration as specified by MCL 600.5072, the trial court was not authorized to order the parties to participate in arbitration to divide their personal property.

Defendant argues that the trial court's error in this regard is harmless, suggesting that arbitration was necessitated by plaintiff's failure to provide the trial court with an itemization of her requested personal property as directed by the trial court at the conclusion of trial. That is, defendant suggests that the trial court ordered the parties to participate in arbitration regarding the division of the parties' personal property after the parties' efforts regarding division of personal property failed. We disagree, however, that the error was harmless. Before arbitration commences in a divorce action, there must be a written agreement between the parties, MCL 600.5071, and the parties must verify in writing or on the record that they were informed of the scope of the arbitration and the arbitrator's powers, as well as the finality of the arbitration award, and that the arbitration is voluntary, as required by MCL 600.5072. See *Miller*, 474 Mich at 34. Although the parties in this case signed the judgment indicating their consent, absent the parties' agreement complying with MCL 600.5071 and MCL 600.5072, the trial court was not authorized to order the parties to arbitrate the division of their personal property.

Plaintiff also contends that arbitration was not appropriate under MCL 600.5072(2) because this case involves allegations of domestic abuse. We agree. Arbitration is not recommended in divorce actions involving allegations of domestic violence. MCL 600.5072(1)(c). In a divorce action involving allegations of domestic violence, the trial court is precluded from referring the case to arbitration unless each party to the action waives the exclusion from arbitration, and each party is represented by an attorney and advised of the arbitration process in compliance with MCL 600.5072(2).

During the trial court proceedings in this case, the trial court issued plaintiff a personal protection order against defendant. The trial court found convincing plaintiff's testimony that defendant was physically and emotionally abusive to plaintiff during the marriage, and found that plaintiff's testimony regarding the abuse was corroborated by other witnesses. Given the finding of domestic violence, arbitration in this case is not recommended. Moreover, absent the parties' waivers in compliance with MCL 600.5072 indicating the parties' agreement to arbitrate despite the finding of domestic violence, the trial court was precluded from ordering the parties to arbitrate the division of their personal property.

B. SPOUSAL SUPPORT

Plaintiff contends that the trial court erred and abused its discretion by denying her request for spousal support. We agree.

The trial court has discretion to award spousal support in a divorce action. MCL 552.23; *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010). We review the trial court's decision whether to award spousal support for an abuse of the trial court's discretion, which occurs when the trial court's decision falls outside the range of principled outcomes. *Loutts v Loutts*, 298 Mich App 21, 25-26; 826 NW2d 152 (2012). We review for clear error the trial court's factual findings underlying its decision regarding spousal support. *Smith v Smith*, 328 Mich App 279, 286; 936 NW2d 716 (2019). A finding is clearly erroneous if, after reviewing the entire record, we are firmly convinced that the trial court made a mistake. *Id*. We defer to the trial court's factual findings that are based on the credibility of the witnesses. *Johnson v Johnson*, 276 Mich App 1, 11; 739 NW2d 877 (2007). If the trial court's factual findings are not erroneous, we must determine whether the trial court's dispositive ruling was fair and equitable in light of the facts. *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). We will affirm the trial court's decision regarding spousal support unless we are firmly convinced that the trial court's ruling was not equitable. *Gates v Gates*, 256 Mich App 420, 433; 664 NW2d 231 (2003).

The primary objective of spousal support "is to balance the incomes and needs of the parties in a way that will not impoverish either party." *Myland*, 290 Mich App at 695. When determining whether to award spousal support, the trial court is required to order "what is just and reasonable under the circumstances of the case," *Loutts*, 298 Mich App at 30, considering the following factors:

(1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and the amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*. at 31 (quotation marks and citations omitted).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Myland*, 290 Mich App at 695 (quotation marks and citation omitted). In this case, the trial court made specific findings applying the above test, stating on the record:

When awarding a division of property in a divorce, there's no one list of factors for determining an equitable distribution. The description of the factors tend to expand or condense depending on the individual facts of the case. In analyzing an equitable distribution of the marital estate this Court relies on an equitable division in light of all the circumstances.

In this case the parties were married for 45 years, the parties operated their marriage in a traditional manner with the Defendant working outside of the home earning income and the Plaintiff primarily taking care of the home, children, and assisting

-5-

in the management of the parties' multiple rental income properties. As such, the Plaintiff['s] sacrifices and work inside the home, enabled the Defendant to build the marital estate and provide for a very comfortable lifestyle for each of the parties.

Both parties are of an advanced age and in the later part of their working lives. Both parties cite various ailments, however no medical evidence was introduced to negate his or her ability to live a normal productive life.

At the time of trial the Defendant reported income in 2022 that was in excess of $100,000, he testified that he suffered an injury in August of 2023 and is now unable to work. However no medical evidence was submitted to this court to support this claim and in light of today's hearing, earlier hearing, he obviously is able to work.

Further testimony was introduced by multiple witnesses that Defendant has earned income outside of his regular employment, more poignantly Defendant even admitted to outside employment and being paid under the table. Therefore, it is reasonable [to conclude] that Defendant['s] earning potential is not accurately stated.

In contrast, the Plaintiff has had an increased need to be awarded property from the marital estate as her earning ability is limited and earning potential stagnant. As well as given the contentious status of the parties a monthly spousal obligation will likely be continuously frustrated. Further, the Defendant has been responsible for providing for the Plaintiff's living expenses during the marriage.

With regard to spousal support, the Plaintiff makes a claim for spousal support pursuant to MCL 522.23. Spousal Support is based on what is just [and] reasonable under the circumstances. Michigan case law sets forth numerous factors to be considered in determining whether spousal support should be awarded. The following factors were relevant for consideration in this case.

First, the past [relations] and conduct of the parties. The Defendant was a primary wage earner during the parties' entire marriage and Plaintiff's primary responsibility during the marriage was to care for the home, children and assist in managing the parties' rental homes.

The Plaintiff's testimony was convincing when she testified that the Defendant was consistently physically and emotionally abusive during the party's marriage and constantly calling her derogatory names, this was corroborated by numerous family members, witnesses, including the parties' children and grandchildren.

Throughout these proceedings the Defendant demonstrated his inability to exercise restraint, including verbally assaulting the parties' son in the hallway of the court, as well as his behavior during the Defendant's deposition at which time he left the deposition and drove recklessly through the parking lot. In addition to that during

the course of these proceedings, a PPO was issued and the Defendant violated that Personal Protection Order early on.

The length of the marriage. This is a long-term marriage, the parties have been married for 45 years.

The parties income and [the] ability of the parties to work. The Plaintiff was unemployed at the time of the trial and has been a stay-at-home wife and mother throughout the marriage. Plaintiff has a 10th grade education. Evidence was presented that the Plaintiff work[ed] part time very briefly at a restaurant during the marriage. The Plaintiff's testimony was credible in that the Defendant did not approve of her working outside of the home.

Given the short work history, Plaintiff will not likely qualify for Social Security benefits. The Plaintiff testified to various current health challenges, however she admitted that the issues with her feet predated the marriage. Plaintiff has undergone several surgeries and continues to treat with her physician and psychiatrists.

The Defendant has always worked outside of the home as a skilled tradesman and as recent as 2022 his income was over $100,00. The parties have acquired additional properties in addition to their marital home yielding approximately $5,300 per month in income, as there are no mortgages on any of the rental properties.

The source and amount of property awarded to the parties is also considered. The property awards will be taken into account in the Court's determination of the spousal support.

Five, the parties' ages. That at the time of trial the Plaintiff was 62 [sic] years old and the Defendant was 63. The Defendant is eligible to receive Social Security benefits, but no information was provided at trial regarding the amount of his monthly benefits or when he plans to elect to [commence] such benefits. The Court considered the ability of the parties to pay, the Defendant is currently employed and has adequate income to meet his needs and financially support the Plaintiff as he has for over four decades.

The Court considered the present situation of the parties. The Plaintiff has never solely supported herself as she married the Defendant at 17 years of age and has had no career or significant work history from which to increase her earning potential. She does not have work-related health or retirement benefits available to her. No evidence was presented to contradict the Plaintiff's position that she is incapable of financially supporting herself.

The Defendant was ordered to contribute to the household expenses [in the amount] of $1,500 during the pendency of this case. The Defendant has had a profitable career as a skilled tradesman and he has demonstrated his ability to build a profitable rental home real estate portfolio.

The Court consider[ed] the needs of the part[ies]. The Defendant has health insurance available to him through his current employer. The Plaintiff does not have employer-related health care insurance. Given her current health condition [it] is reasonable [to] anticipate that health insurance will be pertinent – will be imperative to Plaintiff.

The Defendant is still employed as a skilled tradesman and as previously stated no medical evidence was presented that negates Defendant's ability to continue to work his full-time job and the side jobs he testified to.

The parties' health. The Plaintiff and her primary care physician testified as to various medical conditions she suffers from, further Plaintiff testified as to how her conditions affect her daily life and her need for support. The Defendant testified as to his current medical conditions, but provid[ed] no medical evidence to support that his conditions affected his daily life and his ability to work.

The prior standard of living of [the] parties and whether either is responsible for the support of others was also considered. The parties have lived an above-average standard of living during their marriage and have maintained minimal fixed personal living expenses. The parties have acquired a mid-sized rental property portfolio, all of which are clear and free of any mortgages.

The [court] considers the contribution of the parties to the joint estate. The Defendant has been responsible for the parties' finances throughout the marriage, the Plaintiff cared for the parties' home and assisted in managing the rental properties. In turn, . . . the Defendant earned the wages to secure the rental properties and other assets for the benefit of the joint marital estate.

Finally, the Court considered the parties' fault in causing the divorce. The Plaintiff and several witnesses, including the parties own children and grandchildren, credibly testified that the Defendant was physically, emotionally and financially abusive during the marriage. The Plaintiff also presented credible evidence that the Defendant maintained the power and control of the parties' relationship. Although the abuse did not always result in police intervention or medical attention, domestic abuse is multifaceted. The facts support a finding that Defendant was the sole cause of the divorce.

Given the Defendant' behavior . . . throughout the marriage and in trial, it is very unlikely that he will comply with a monthly spousal support award to Plaintiff. And this Court anticipates that the Plaintiff will continuously incur attorney fees to enforce a monthly spousal support payment. Therefore, the Court finds that the property award provides an equitable division under the circumstances.

With regard to attorney fees, given the size of the estate and awards both parties have the ability to pay their own attorney fees.

The trial court found that both parties had contributed to the establishment of marital wealth, but that plaintiff had no earning capacity and would not receive retirement benefits apart from those of defendant. Defendant, however, at the time of trial continued to earn an income of over $100,000 per year and could anticipate social security benefits. The trial court also found that defendant was 100% at fault for the ending of the marriage in light of his substantial physical and emotional abuse of plaintiff, confirmed by other witnesses.

Plaintiff does not contend that the trial court's findings are clearly erroneous, but instead argues that the trial court's conclusion not to award plaintiff spousal support is not supported by the factual findings. We agree. Having found that defendant has substantial earning capacity and that plaintiff has none, and that defendant was solely at fault for the breakdown in the marital relationship, the trial court nonetheless divided the marital assets essentially evenly. With the exception of the marital home, valued at $226,000, which plaintiff received along with one-half of the remaining mortgage debt, all other accounts and income-producing properties were divided essentially evenly. Thus, the trial court properly considered that defendant was at fault when searching for an equitable division of the property, but also properly did not overly penalize defendant with a punitive division of the property. See *McDougal v McDougal*, 451 Mich 80, 90; 545 NW2d 357 (1996).

No spousal support obligation for defendant, however, means that defendant now goes forward with not quite half of the marital assets, but with two income-producing rental properties ($30,000 annually) and his wage earnings (over $100,000 annually) intact, for a monthly gross income of $10,833. Meanwhile, plaintiff is relegated to the income from the two rental properties awarded to her as her sole income ($33,600), for a gross monthly income of $2,800. As a result, the divorce, which the trial court found to be totally the fault of defendant, produced a highly-beneficial financial result for defendant, who no longer is obligated to support the 63-year-old wife who raised the couple's children, maintained the home, and helped to build the couple's rental-property portfolio. Although defendant must now pay rent or purchase housing, his earnings are ample to do so.

By contrast, for choosing to end the continuing physical and emotional abuse by divorcing defendant, plaintiff is left impoverished. Although plaintiff was awarded the marital home and roughly half of the other marital assets, plaintiff's income is now greatly diminished from her marital level of income with no likelihood of her increasing her income. To maintain the rental properties, plaintiff will be required to use some of the rental income for property taxes and maintenance costs. Although plaintiff was awarded the marital home, it was encumbered with some debt, and also will require her to pay yearly property taxes. Because she has almost no income, plaintiff may find herself unable to remain in the marital home, which even if sold would equal less than two years of defendant's income.

Again, the object in awarding spousal support is to balance the incomes and needs of the parties so that neither party will be impoverished; the spousal support determination should be based on what is just and reasonable under the circumstances of the case. In this case, the decision to not award spousal support to plaintiff was not just and reasonable, and does not balance the incomes and needs of the parties. Rather, defendant is permitted to live at much the same income level as before the divorce, while plaintiff is left with a fraction of the income she had access to while married.

The trial court reasoned that defendant's history of failing to comply with the trial court's orders suggested that defendant would fail to pay any ordered spousal support, resulting in plaintiff having to pursue legal action against defendant into the future. This reasoning suggests that parties who obey court orders may have spousal support orders imposed, while parties who defy court orders are relieved of spousal support obligations. This result would quite obviously create a perverse incentive for parties in divorce actions to defy the orders of the court. The trial court essentially rewarded defendant for his bad behavior.

The trial court also suggested that it considered the income disparity between the parties resolved by the property division, implying that the value of the property awarded could be used to support plaintiff. Although the source and amount of the property award is a proper consideration for the trial court when determining whether to impose spousal support, the trial court must also consider the past relations and conduct of the parties, the length of the marriage, the parties' abilities to work, the parties' ages, the parties' prior standard of living, and a party's fault in causing the divorce. See *Loutts*, 298 Mich App at 30. In addition, this Court has held that a party to a divorce judgment should not have to invade awarded assets for support. *Olson v Olson*, 256 Mich App 619, 632; 671 NW2d 64 (2003).

In this case, plaintiff received the marital home encumbered by over $16,000 in debt, and two income-producing rental properties, which generate $33,600 annually. Because plaintiff has no other income and very limited means of obtaining income, without spousal support plaintiff will be compelled to deplete her assets to pay her living expenses. By contrast, defendant received two income-producing properties generating $30,000 annually in addition to his salary, for a total of over $130,000 yearly, creating a significant disparity in the parties' financial resources. Because the trial court's denial of spousal support for plaintiff is not consistent with the trial court's findings of fact and is almost certain to impoverish plaintiff, we conclude that the trial court abused its discretion by denying spousal support for plaintiff.

## C. ATTORNEY FEES

Plaintiff contends that the trial court abused its discretion by ordering her to pay her own attorney fees. We review for an abuse of discretion the trial court's decision whether to award attorney fees in a divorce action. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015).

In divorce proceedings, attorney fees are authorized by statute, MCL 552.13, and by court rule, MCR 3.206(D), in certain circumstances. See *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). MCL 552.13(1) provides that "[i]n every action brought, either for a divorce or for a separation, the court may require either party to pay . . . any sums necessary to enable the adverse party to carry on or defend the action, during its pendency." MCR 3.206(D)(1) provides that "[a] party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action. . . ." MCR 3.206(D)(2)(a) provides that a trial court may award attorney fees when the party alleges facts demonstrating that "the party is unable to bear the expense of the action, . . . and that the other party is able to pay . . ." Thus, attorney fees may be awarded in a divorce action when necessary to enable a party to prosecute or defend the action. *Skaates v Kayser*, 333 Mich App 61, 85; 959 NW2d 33 (2020).

A party requesting attorney fees has the burden to demonstrate facts sufficient to justify the requested fees. *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007). In determining whether to award attorney fees, the trial court must consider the "specific financial situation of the parties and the equities involved." *Loutts*, 309 Mich App at 218. A party may not be required to invade the party's assets to pay attorney fees when the party is relying on the assets for support. *Skaates*, 333 Mich App at 85. A party sufficiently demonstrates the inability to pay attorney fees when the amount of fees exceeds the party's yearly income. *Myland*, 290 Mich App at 702.

In this case, the judgment of divorce provides that neither party is awarded attorney fees. However, it is unclear from either the judgment or the record the reasons for the trial court's decision to deny plaintiff attorney fees and whether the trial court considered the specific financial situation of the parties and the equities involved.[1] Because we cannot discern from the record whether the trial court considered the specific situation of the parties involved, we conclude that the trial court abused its discretion.

The trial court's judgment regarding arbitration of the division of the parties' personal property is vacated, as is the trial court's denial of spousal support and attorney fees for plaintiff. This matter is remanded to the trial court for further proceedings consistent with this opinion. The judgment of divorce is affirmed in all other respects. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates

---

[1] Plaintiff refers to various points in the record where the trial court denied plaintiff's requests for attorney fees, but these requests for attorney fees relate to specific motions and not the final decision of the trial court regarding attorney fees. The reference to the hearing held February 24, 2023, relates to a motion regarding a status quo order with which defendant allegedly was not complying; the trial court stated that it was not granting plaintiff attorney fees "at this time." The reference to the hearing on September 7, 2023, in which the trial court stated that it had "read everything" and "knew the history" of the case, then denied plaintiff's request for attorney fees, did not occur in the divorce action, but rather in a connected civil action between the parties, lower court no. 23-007087-NO, in the context of a motion to amend the complaint in that case. The trial court stated "the motion is denied as to your attorney fees and the amendment . . . to the Complaint, okay." Later in the same hearing, the trial court denied a motion for attorney fees in connection with certain motions regarding compelling defendant's deposition.