*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARNA LYNN CORNILLE,

Plaintiff-Appellee,

v

PAUL JEAN CORNILLE,

Defendant-Appellant.

UNPUBLISHED
December 16, 2025
9:53 AM

No. 372215
Wayne Circuit Court
LC No. 23-104658-DM

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Defendant appeals from the trial court's grant of spousal support. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The marriage between the parties commenced on November 10, 2001, and produced one adult offspring, EC. At the onset of the marriage, both parties were engaged in full-time employment. Plaintiff held a position as a fulfillment manager at Comcast. Following the birth of their child in 2005, plaintiff transitioned to part-time work at a dental office, a role she maintained until 2012. Prompted by defendant's employment opportunities, the parties moved out of Michigan and plaintiff opted to serve as a primary caregiver for EC while defendant continued in full-time employment. In 2017, the couple returned to Michigan, resuming residency in their shared marital home.

Plaintiff has worked as a human resources administrator at Building Bridges since October 2017 and works between 30 to 32 hours weekly, earning $29 hourly. In 2017, defendant worked at Intrust RX. Defendant has worked at Boehringer Ingelheim Pharmaceuticals since 2018 and became a national account director in November 2022. Defendant earned approximately $198,909.36 in 2019, $212,925.58 in 2020, $221,841.32 in 2021, $217,806.95 in 2022, and $270,641.60 in 2023. The parties agree that defendant's 2023 income was an anomaly because he received a variable pay incentive program ("VPR") annual bonus of $38,000, for which he was eligible under his former position, in April 2023. Defendant is not qualified for this bonus program under his current position and only receives nonguaranteed quarterly bonuses. In 2023, he

-1-

received both bonuses. In May 2022, defendant disclosed to the plaintiff his sexual orientation, identifying as gay. The couple cohabited until the completion of EC's high school education in 2023. Subsequently, the marital residence was sold on June 15, 2023, with the proceeds from the transaction distributed equally between the parties.

In May 2023, plaintiff initiated divorce proceedings, and by October 2023, plaintiff sought interim spousal support, a request initially opposed by defendant. Following a hearing, the trial court deferred its decision on interim support, indicating any such order would only be temporary in light of the upcoming trial. A one-day bench trial addressing solely spousal support took place in March 2024.

During the trial, both parties provided testimony, and Jacqueline B. Roessler, a certified divorce financial analyst, delivered expert testimony concerning the marital balance sheets and a spousal support analysis. Roessler concluded that plaintiff required $3,500 per month in spousal support for a duration of 11 years. Conversely, defendant's alimony report suggested a much lower figure of $1,574 monthly for a period of three to five years.

Post-trial, the parties submitted opposing factual findings and legal conclusions. Defendant contested plaintiff's findings. Ultimately, the trial court convened a hearing, leading to an agreement to permit the trial court to issue its ruling at a later time. In a subsequent hearing, the trial court awarded plaintiff $3,500 in monthly spousal support for 11 years, citing its authority under MCL 552.23 and specifically enumerating the factors considered in its determination.

The trial court's findings included the following key points: (1) defendant was identified as the "primary breadwinner," while plaintiff had primarily assumed a homemaker role combined with part-time employment; (2) the parties were noted to have a long-term marriage of 22 years; (3) both parties held employment and were able to work, with plaintiff earning approximately $40,042.69 annually against defendant's base salary of $198,000, excluding bonuses; (4) plaintiff's inability to meet her daily needs without spousal support; (5) the ages of the parties were established as 55 for plaintiff and 52 for defendant; (6) defendant was found to possess the financial capacity to pay alimony; (7) defendant earned a significant income while plaintiff had experienced gaps in her work history; (8) the court found that plaintiff's monthly expenses exceeded her income, while defendant exhibited a surplus post-expenses; (9) both parties were reported to be in good health; (10) the trial court considered both parties' lifestyle discrepancies; (11) it was acknowledged that defendant contributed more financially to the joint estate, while plaintiff played a crucial role in caretaking and household management; (12) the initiation of the divorce was influenced by the defendant's disclosure of a change in sexual orientation to plaintiff; (13) the impact of cohabitation on the financial dynamics of the case was deemed irrelevant; and (14) the award of spousal support was considered equitable, given plaintiff's contribution to maintaining the family structure and facilitating the defendant's professional advancement.

Plaintiff filed a notice of presentment for entry of an order, including a proposed order for spousal support, which defendant opposed. Defendant included a proposed order, which plaintiff opposed. Eventually, the trial court ordered that defendant pay modifiable monthly spousal support of $3,500 to plaintiff for 11 years beginning July 1, 2024. Defendant now appeals the award of spousal support.

## II.  ANALYSIS

### A.  SPOUSAL SUPPORT AWARD

Defendant raises numerous issues relative to the trial court's grant of spousal support.  At their core, defendant's arguments are seemingly premised on his belief that the trial court's award of spousal support was inequitable and resulted from abuses of discretion by the trial court.

"It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012).  "We also review for an abuse of discretion a trial court's decision whether to impute income to a party.  An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 25-26 (quotation marks and citations omitted).  "We review for clear error the trial court's factual findings regarding spousal support. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Id*. at 26 (citation omitted).  "If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case.  We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable." *Id*. (citation omitted).  This Court reviews de novo issues involving statutory interpretation. *Miller v Miller*, 474 Mich 27, 30; 707 NW2d 341 (2005).

"Michigan's statute governing spousal support favors a case-by-case approach to determining spousal support." *Loutts*, 298 Mich App at 29.  MCL 552.23(1) states:

> Upon entry of a judgment of divorce . . ., if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . ., the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

"[A] trial court's decision to award spousal support is discretionary and should reflect what is just and reasonable under the circumstances of the case." *Loutts*, 298 Mich App at 30 (quotation marks and citations omitted).  "Spousal support does not follow a strict formula." *Id*.  "The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Id*. at 26 (quotation marks and citation omitted).  The trial court may consider the following factors when determining an award of spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint

estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Id*. at 31 (quotation marks and citations omitted).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). A "trial court's failure to make relevant findings" regarding spousal support precludes appellate review of the trial court's decision. *Woodington v Shokoohi*, 288 Mich App 352, 354; 792 NW2d 63 (2010). A trial court is not precluded from considering a party's "voluntary assumed obligation," including supporting a child regardless of his or her age. *Parrish v Parrish*, 138 Mich App 546, 556-557; 361 NW2d 366 (1984).

Defendant argues the trial court's award of spousal support was inequitable in part because he was punished for his sexual orientation. Specifically, in awarding spousal support, defendant contends the trial court improperly found him at fault on the basis of his sexual orientation. However, the record belies defendant's assertions.

As noted, the trial court went through the 14 factors as outlined in *Loutts*, 298 Mich App at 31. Factor 12 requires the trial court to determine fault. Here the trial court simply found that the divorce "was initiated due to [defendant's] disclosure to [plaintiff] of a change in his sexual orientation." Plaintiff testified that without the disclosure the parties would likely still be married, stating that defendant's disclosure of his change in sexual orientation was "the only reason" she filed for divorce. We discern no error from the trial court's findings, much less an encroachment of any of defendant's civil liberties. Rather, the clear and unrebutted testimony was that defendant's sexual orientation caused the dissolution of the marriage.

Defendant also contends that the trial court erred by not adequately determining his income. However, the record again contradicts defendant's assertions. The trial court characterized defendant as the "primary breadwinner," noting his consistent employment and a "substantial" and "steadily increasing" income. It recognized his position as a national account director of trade relations, with a base salary of $198,000, exclusive of bonuses.

Furthermore, the court acknowledged that while defendant received quarterly incentive compensation, he no longer benefited from VPR bonus income. The court found defendant's testimony credible and established his gross salary at $198,000, in addition to variable bonuses. Importantly, the trial court deemed defendant's income from 2023 as an outlier and chose not to include this figure in its income calculations. Instead, it relied upon the average income derived from the years 2020, 2021, and 2022.

In subsequent orders, including the judgment of divorce, the trial court reiterated its characterization of the 2023 income as anomalous, articulating that it averaged defendant's annual earnings from 2020 to 2022, accounting for all bonuses, incentives, and any supplementary income beyond the base salary. The trial court also concluded that if defendant's 2024 income demonstrates that 2023 was not a statistical anomaly, plaintiff would need to petition for a retroactive modification of the award. Crucially, the trial court's findings concerning defendant's income are thoroughly substantiated by the record.

Defendant argues that the trial court erred in its determination of plaintiff's income; however, this argument lacks support from the record. The trial court concluded that plaintiff assumed a significant homemaker role, supplemented by part-time employment. Notably, the court acknowledged that defendant was able to pursue his master's degree largely due to plaintiff managing the household and childcare responsibilities.

The trial court also determined that plaintiff's reported annual income was $40,042.69 from her position as a human resources administrator, asserting that it was "unlikely" she would earn significantly more in the future, citing her work history, age, and the current employment landscape. Additionally, the court expressed concerns regarding plaintiff's ability to further her education or transition to a new career to enhance her earning potential at the age of 55. The court classified her position as full-time according to her employer's standards and highlighted a gap in her work experience during critical earning years.

The court noted plaintiff's essential role in maintaining the household and supporting defendant's career progression, while reiterating that her opportunities for advancement are limited in comparison to defendant, who is experiencing consistent career advancement. In summarizing its findings, the trial court found plaintiff's annual income was $40,000, while also emphasizing her contributions to the family dynamics and her willingness to care for the minor child. Again, each of the trial court's findings regarding plaintiff's earnings is supported by record evidence.

Defendant next asserts that plaintiff possesses the necessary educational qualifications, relevant work experience, and the capacity to engage in full-time employment, specifically a 40-hour work week. Therefore, defendant argues that the trial court erred in its discretion by failing to impute additional income to plaintiff, which defendant asserts should be $60,000 annually.

We have held that a "trial court has the discretion to impute income when a parent voluntarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn." *Stallworth v Stallworth*, 275 Mich App 282, 286-287; 738 NW2d 264 (2007). In summarizing its findings, the trial court found it was "not justifiable to impute income at $60,000[] at this time." The record established plaintiff began working again in 2017, and from then until the bench trial, plaintiff never reduced her income. Rather, the record clearly demonstrated that plaintiff has a history of working full-time and part-time, but has not been offered a position with 40 hours weekly by her current employer. Notably, plaintiff has not worked full-time since 2004 and was 55 years old at the time of trial. She has a five-year gap without any work experience when she stayed home to take care of the household and the parties' child. Currently, plaintiff's employer affords her flexibility in her work schedule. Although working 40 hours weekly could yield additional income, plaintiff has not been offered a position with that many weekly hours by her employer. From this record we discern no error by the trial court in establishing plaintiff's income at $40,000 annually.

Defendant next argues that the trial court erred by failing to identify each party's expenses and financial needs postdivorce. Again, the record demonstrates the contrary is true.

The record reveals that the trial court assessed the distribution of property awarded to both parties, concluding that each received an equitable share of the proceeds from the sale of the marital home. However, the court correctly determined that plaintiff lacked the ability to meet her

daily financial obligations without spousal support and has utilized a portion of her proceeds to cover her expenses. The court correctly found that defendant possesses the financial capability to provide spousal support, noting that plaintiff's monthly financial requirements exceed her income, whereas defendant has a surplus after fulfilling his monthly obligations.

The trial court recognized that the parties are no longer cohabitating but are accustomed to a standard of living characterized by comfort. It noted that plaintiff has undergone a significant change in lifestyle due to the separation and has had to make corresponding adjustments, while defendant continues to experience a comfortable lifestyle. The court emphasized that plaintiff needs substantial support, which the trial court found defendant is capable of providing.

The financial records reveal that both parties received approximately $156,525.27 each following the sale of the marital residence in June 2023, subsequently residing in separate rental accommodations. Plaintiff's monthly expenditures amounted to roughly $6,740.67, which encompassed $2,000 allocated for rent. Defendant contends that the trial court erred in endorsing plaintiff's budget, specifically criticizing the inclusion of $250 monthly for the expenses related to EC's groceries and discretionary spending.

While the trial court did not explicitly factor in defendant's contributions toward EC's college tuition as well as room and board, it did not assert that these amounts were included within plaintiff's expense calculations. Consequently, the alleged error is merely theoretical. Even presuming that the trial court considered defendant's claimed additional expenses, this would not rise to the level of a clear error, given that plaintiff's expenditures would continue to exceed her income.

The evidentiary record establishes that both parties are financially supporting EC through a joint bank account. Plaintiff provided testimony indicating that defendant has increased his expenditures from this joint account since their separation, specifically citing expenditures for social outings and "numerous Amazon purchases." The joint account is utilized to cover their respective rent and utility costs, with plaintiff characterizing defendant's use of the account as a "[sl]ush fund," in contrast to her own utilization of funds from the marital home's sale to address larger financial obligations. It bears noting that a party "should not have to invade property for support." See *Richards v Richards*, 310 Mich App 683, 692; 874 NW2d 704 (2015) (quotation marks and citation omitted).

Roessler calculated plaintiff earned $3,337 monthly in gross income and defendant earned $18,463 monthly in gross income. Plaintiff's monthly after-tax income is $2,370 and defendant's after-tax monthly income is $12,919. Plaintiff's monthly expenses were $6,800, and Roessler assumed defendant's monthly expenses were the same. Roessler explained plaintiff was projected to "be short" $570 monthly for her expenses, while defendant would have a monthly surplus of $2,619 monthly after paying expenses, including spousal support. Roessler did not include defendant's retirement savings or "support of others" in her calculations, but noted those figures would not affect her determination of income. She also did not account for defendant's payment of EC's health care expenses, tuition, and room and board. She did not consider defendant's monthly rent was $500 more than plaintiff's rent. Roessler's report took "into consideration general living expenses for each party." Roessler typically does not include a party's expenses for adult children or third parties in her calculations for spousal support.

Defendant asserted plaintiff's monthly expenses were lower, testifying he never saw any expenses for "water, garbage, sewer[,] or trash." He believed plaintiff's automobile insurance was cheaper. Defendant testified he has also used the proceeds from the sale of the marital home to cover expenses. Defendant testified Roessler's calculation of his gross monthly income was inaccurate because she failed to include expenses: (1) $2,500 monthly rent; (2) $225 monthly utilities, (3) $30,000 annually ($2,500 monthly) for EC's tuition payments and room and board, plus incidentals; (4) automobile insurance; (5) $250 monthly for health insurance; (6) $200 monthly for his cell phone and EC's cell phone; (7) $650 monthly for household items; (8) $175 monthly for a gym membership; (9) $150 monthly for medications; (10) $450 monthly for dining out and entertainment; and (11) $275 monthly for pet care; and (12) $2,000 monthly for retirement savings. On cross-examination, plaintiff's counsel asked defendant if his monthly expenses were "just shy of what [Roessler] imputed of the $6,800 to [him], correct?" He replied: "Okay."

Defendant asserts the trial court erred by not considering his financial support of the parties' adult daughter. As previously stated, the trial court noted defendant's support of the parties' adult child, including paying for her college tuition, but stated it was "not a contribution to a third-party," and supporting an adult child was "not mandated by this court." The parties' child was 18 years old and was a freshman in college at the time of the bench trial. Beginning with her second semester, defendant paid for part of EC's college expenses using funds from the parties' joint bank account. The parties intended to pay for EC's college education when they were married. Defendant wished to pay for EC's college expenses going forward, but plaintiff wished for EC to pursue financial aid and scholarship opportunities because of the change of circumstances between the parties. Defendant testified, going forward, he was covering EC's tuition, room and board, and incidentals, which was approximately $30,000 annually. He expressed a willingness to also pay for EC's graduate education. Defendant testified both parties should help pay EC's tuition. Contrary to defendant's assertion, the trial court did not err or abuse its discretion by declining to consider his ongoing financial support of EC, which was an obligation he assumed voluntarily. See *Parrish*, 138 Mich App at 556-557. Although defendant should be commended for this support, the trial court was not mandated to consider this expense. Again, if defendant believes he will become impoverished by paying spousal support and EC's college expenses, it is noted his payment of the college expenses is not a mandate but a choice.

In addition to the factors already addressed, the trial court also found the parties' marriage was "long-term," or 22 years. The trial court awarded $3,500 monthly in spousal support for 11 years. The trial court explained:

> [Plaintiff] is in need of substantial rehabilitative spousal support, which [defendant] is capable of remitting. [Defendant's] income is substantial and the trial [c]ourt has broad discretion to award spousal support that is just and reasonable, under the circumstances of this case. . . . [T]herefore, applying the spousal support factors to this matter and based on testimony presented to the [c]ourt, during trial, as well as the history between the parties and their past and present earning capacities, the [c]ourt . . . finds it is fair and equitable to award plaintiff . . . modifiable spousal support in the amount of $3,500, for a period of 11 years.

Notably, the trial court did not award plaintiff any percentage of defendant's bonus income. Defendant contends plaintiff was not entitled to rehabilitative spousal support, because under

*Friend v Friend*, 486 Mich 1035; 783 NW2d 122 (2010), such support is only intended to help a party "assimilate into the workforce and establish economic self-sufficiency." In *Friend*, our Supreme Court remanded to the trial court because there was confusion whether the "alimony award was intended to be alimony in gross or periodic alimony." *Id*. In this case, there is no such confusion as to why the trial court awarded spousal support. The record also does not support defendant will become impoverished by paying this award of spousal support. From this record, we discern no error by the trial court and therefore affirm the award and amount of spousal support.

## B.  JUDICIAL BIAS AND REASSIGNMENT

Defendant asserts the trial court judge was biased against him when it determined he was at fault for causing the divorce on the basis of his sexual orientation.

Generally, this Court "review[s] a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009). This Court also "review[s] de novo the interpretation and application of . . . court rules. . . ." *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023). However: "In civil cases, Michigan follows the raise or waive rule of appellate review. Under that rule, litigants must preserve an issue for appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). Because defendant did not argue the trial court was biased or request to disqualify the judge in the trial court, this Court is not obligated to address this issue. *Id*. Even if we were to review defendant's claim of bias we would hold that following our thorough examination of the evidentiary record pertaining to this case, we deem defendant's claims of bias to be wholly without merit.

Affirmed. Plaintiff having prevailed in full is entitled to costs. MCR 7.219(A).

/s/ Matthew S. Ackerman
/s/ Stephen L. Borrello
/s/ Anica Letica